IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lamar Dewey Irvin,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>Carolyn W. Colvin,<br>Acting Commissioner of Social<br>Security,<br><br>　　　　　　　　　Defendant. | Civil Action No. 2:15-cv-01973-MGL-MGB<br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

　　　　This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

　　　　The Plaintiff, Lamar Dewey Irvin, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

### **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

　　　　Plaintiff was 57 years old on his alleged disability onset date of May 1, 2009. (R. at 31, 44.) Plaintiff claims disability due to left knee vascular anatomy, eye problems, rheumatoid arthritis, and herniated discs in his spine. (R. at 159.) Plaintiff has an associate's degree and past relevant work as a traffic-engineering technician and a sales attendant. (R. at 39, 45.)

　　　　Plaintiff filed an application for DIB on April 18, 2012. (R. at 31.) After his application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on January 15, 2014. (R. at 31.) In a decision dated June 20, 2014, the ALJ found that Plaintiff was not disabled prior to December 20, 2013 but "became disabled on that date and has continued to be disabled through the date of this decision." (R. at 31-40.) The Appeals Council denied

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Plaintiff's request for review, (R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> (2) The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3) Since the alleged onset date of disability, May 1, 2009, the claimant has had the following severe impairments: knee disorder and lumbar disorder (20 CFR 404.1520(c)).
>
> (4) Since the alleged onset date of disability, May 1, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds that prior to December 20, 2013, the date the claimant became disabled, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).
>
> (6) After careful consideration of the entire record, the undersigned finds that beginning on December 20, 2013, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except claimant requires a sit/stand option approximately every hour allowing claimant to change positions from sitting to standing.
>
> (7) Prior to December 20, 2013, the claimant was capable of performing past relevant work as a traffic-engineering technician or sales attendant. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (8) Beginning on December 20, 2013, the claimant's residual functional capacity has prevented the claimant from being able to perform past relevant work (20 CFR 404.1565).

>   (9)     The claimant was an individual closely approaching retirement age on December 20, 2013, the established disability onset date (20 CFR 404.1563).
>
>   (10)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>   (11)    The claimant does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568).
>
>   (12)    Since December 20, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).
>
>   (13)    The claimant was not disabled prior to December 20, 2013, (20 CFR 404.1520(f)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence

to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

Plaintiff claims the ALJ erred in failing to find him disabled from May 1, 2009 through December 19, 2013. Specifically, Plaintiff contends the ALJ "failed to properly weigh the medical evidence" in giving "'little weight' to the opinions from treating orthopedic surgeon Dr. Gutierrez" but "fail[ing] to provide any specific reasons for rejecting the opinions of treating Orthopedist Gutierrez." (Dkt. No. 7 at 9-10 of 15.)[2] Plaintiff also contends the ALJ "failed to properly evaluate [his] credibility" where the ALJ found Plaintiff "not entirely credible prior to December 20, 2013," but "failed to provide a single reason for finding [Plaintiff's] testimony regarding his impairments not supported by the record other than making this conclusory finding." (Dkt. No. 7 at 13-14 of 15.)

### **A**.     **Rejection of Dr. Gutierrez's Opinions**

As noted above, Plaintiff asserts the ALJ "failed to properly weigh the medical evidence" in giving "'little weight' to the opinions from treating orthopedic surgeon Dr. Gutierrez." (Dkt. No. 7 at 9-10 of 15.) Plaintiff contends the ALJ's "conclusory finding that Dr. Gutierrez's opinions are not consistent with the other medical evidence is insufficient to permit meaningful judicial review." (*Id.* at 10.) According to Plaintiff, the ALJ "failed to provide any specific reasons for rejecting the opinions of treating Orthopedist Gutierrez." (*Id.*) Plaintiff asserts Dr. Gutierrez's opinions were entitled to controlling weight because his opinions were "based on appropriate clinical and diagnostic testing and are uncontradicted by other substantial evidence in the record." (*Id.* at 12 of 15.)

Plaintiff first saw Dr. Gutierrez, an orthopedic doctor, in July of 2012. (*See* R. at 351.) In addition to containing some of Dr. Gutierrez's records related to treatment of the Plaintiff,[3] the record

---

[2]Plaintiff refers to this physician as Dr. Gutierrez. (*See generally* Dkt. No. 7.) The ALJ and the Defendant refer to this physician as Dr. Gutierrez Garza. (*See generally* Dkt. No. 8; *see also* R. at 31-40.) Dr. Gutierrez and Dr. Gutierrez Garza are the same person. (*See, e.g.*, R. at 351, 388-89.)

[3]In his brief, the Plaintiff notes that "[n]one of the treatment records [from Dr. Gutierrez] between July 2012 and January 2013 are included in the certified record." (Dkt. No. 7 at 5 of 15.)

contains a Spinal Impairment Questionnaire completed by Dr. Gutierrez as well as a letter. (*See* R. at 351-57, 388-89.) On October 6, 2012, Dr. Gutierrez completed a Spinal Impairment Questionnaire concerning the Plaintiff. (R. at 351-57.) Dr. Gutierrez listed Plaintiff's diagnoses as degenerative changes of discs L2 to S1, radiculopathy, and osteonecrosis. (R. at 351.) He indicated Plaintiff's prognosis was "good for life" but "bad for function." (R. at 351.) In response to the question inquiring about "positive clinical findings" supporting his diagnosis, Dr. Gutierrez listed, *inter alia*, an abnormal gait and positive straight leg raising tests (left at 25 degrees, right at 45 degrees). (R. at 351-52.) When asked to identify the laboratory and diagnostic tests results that demonstrate or support his diagnosis, Dr. Gutierrez answered as follows: "study MRI demonstrates the lesion on the disc and EMG confirms the left L5 radiculopathy." (R. at 353.) According to Dr. Gutierrez, Plaintiff's primary symptoms are "pain in the lumbar spine with radiculopathy . . . [that] increases with physical activity." (R. at 353.) Dr. Gutierrez indicated that Plaintiff had pain all the time and that the pain increased with physical activity. (R. at 353.) Dr. Gutierrez opined that Plaintiff could only sit for 2 hours, and stand/walk for 2 hours, in an eight-hour workday. (R. at 354.) Dr. Gutierrez indicated that Plaintiff could lift and carry up to five pounds occasionally. (R. at 354-55.) Dr. Gutierrez did not list any medication he prescribed for the Plaintiff, but he did state that Plaintiff had also been treated by physical therapy. (R. at 355.) Dr. Gutierrez indicated that Plaintiff was not a malingerer and that Plaintiff was incapable of tolerating even low stress due to his constant pain. (R. at 356.) He stated that Plaintiff would "constantly" have to take unscheduled breaks to rest during an eight-hour workday. (R. at 356.) Dr. Gutierrez indicated that Plaintiff could not push, pull, kneel, bend, or stoop, and that he needed to avoid heights. (R. at 357.) Dr. Gutierrez opined that Plaintiff had been limited as described in the questionnaire since June of 2009. (R. at 357.)

      The record also contains a letter dated November 29, 2012 from Dr. Gutierrez. (*See* R. at 388-89.) That letter states (verbatim),[4]

---

[4] Dr. Gutierrez's letter dated November 29, 2012 was translated from Spanish to English. (*See* R. at 31.)

6

Mr. Irvine [sic] is a patient of this doctor's office since July due to a series of problems arising from an accident at work [that] occurred [i]n March 2009. I am asked to provide a summary of his evolution until present day. In said accident, he suffered an injury on his left knee and came for orthopedic evaluation[.] X-rays were taken on this revision and they showed no change, his clinical evaluation suggests an injury on his medial meniscus and an MRI was ordered[.]

He came back with the results from the MRI, which <u>confirmed a tear on the posterior horn of the medial meniscus</u>; therefore, treatment with arthroscopy is advised. This procedure is conducted on April 7th, 2009, with a meniscectomy on posterior horn of the medial meniscus and a chondromalacia shaving of the inferior pole of the patella.

The patient presents poor evolution with constant pain and inflammation in the knee. Other assessments are conducted and vascular damage is ruled out. He undergoes physical therapy and arthrocentesis, and the patient continues to have inflammation and pain in addition to functional disability.

A new MRI SHOWS AN OSTEOCHONDRAL LESION ABOVE THE MEDIAL CONDYLE and, upon examination of prior studies, said lesion does not show.

Currently, the patient continues to have this problem, which seriously disables him due to pain and inflammation. The new X-rays continue to show this lesion above the medial condyle on the support surface; therefore, his condition is important and disabling. I suggest an arthroscopic procedure for perforation and addition of active growth factor in the area, but with a negative prognosis to be considered[.]

During the evolution, patient also complained from waist pain and constant irradiation to the left leg, said condition is present up to the present day.

An MRI showed degenerative changes on L2/3 and L4/5 disks CAUSING STENOSIS OF THE MEDULLARY CANAL ON THE AREA[.] There were also degenerative changes on the L5/S1 disk. Recently, an ELECTROMYOGRAPHY OF THE LOWER EXTREMITIES was conducted and it showed <u>RADICULOPATHY OF THE LEFT L5</u>[.]

The PROGNOSIS for this patient is 1) After-effects from meniscectomy on medial meniscus of the right knee and osteochondritis desiccant of medial condyle 2) Stenosis on the medullary canal with radiculopathy of left L5.

Currently, he is undergoing medical treatment with an anti-inflammatory and antineuritic painkillers, as well as control of physical activities and the use of external support measures based on his activities[.]

The patient attends to one or two medical appointments per month for control, treatments are adjusted depending on his needs.

Within his control, the possibility of side effects is evaluated, such as gastritis caused by medication, condition which is present, resulting on the necessary adjustment of the treatment as well as possible lesions to liver or kidneys–given that they are the elimination route of said drugs, which have been used for a long period of time up to the present day.

The use of antineuritic medication and painkillers may alter his alertness and quick-response ability[.]

The prognosis of the lesion on the knee is considered bad for its function and good for his life. The one for the spine is also considered bad for its function and

7

> good for his life[.] And both conditions cause important alteration to his quality of life.
>
> Total disability for any physical activity is suggested for the next twelve months, and periodic evaluation and control shall continue[.]

(R. at 388-89.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; *see also* 20 C.F.R. § 404.1527. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Even so, "the rule does not require that the [treating physician's opinions] be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (citing *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986)).[5] The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; *see also* 20 CFR § 404.1527(c)(2).

In evaluating Dr. Gutierrez's opinions, the ALJ stated, *inter alia*,

> Hector Gutierrez, M.D. completed a spinal impairment questionnaire on behalf of claimant dated June 8, 2012. Dr. Gutierrez noted he first treated claimant in June 2012 for degenerative changes of [the] lumbar spine, radiculopathy, and osteonecrosis. Dr. Gutierrez opined claimant was limited to sit[t]ing, standing, and walking, for up to 2 hours each in an 8-hour day. Dr. Gutierrez noted claimant was limited to lifting 0-5 pounds occasionally and claimant was incapable of even low

---

[5]*But see* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

>> stress jobs (Ex. 5F). The undersigned gives little weight to the opinion of Dr. Gutierrez because it is not consistent with the longitudinal objective medical evidence of record.

(R. at 38.) As noted above, Plaintiff asserts the ALJ erred because his "conclusory finding that Dr. Gutierrez's opinions are not consistent with the other medical evidence is insufficient to permit meaningful judicial review" because "[i]t is unknown what evidence the ALJ believed contradicts the opinions from Dr. Gutierrez or why." (Dkt. No. 7 at 10 of 15.)

If the foregoing paragraph in the ALJ's decision–containing the assertion that "the opinion of Dr. Gutierrez . . . is not consistent with the longitudinal objective medical evidence of record"– was the only analysis of Dr. Gutierrez's opinions, Plaintiff's argument would be a sound one. However, the ALJ's decision contains much more. In a different section of his decision, the ALJ stated,

> MRI of the lumbar spine dated November 29, 2012 revealed degenerative changes on L2/3 and L4/5 disks causing stenosis of the canal. There were also degenerative changes on the L5/S1 disk. Electromyography of the lower extremities showed radiculopathy of the left L5. Dr. Gutierrez Garza (certified medical doctor in Mexico) assessed claimant with after-effects from meniscectomy on medial meniscus of the right knee and osteochondritis of medial condyle and stenosis of the canal with radiculopathy of the left L5 (Ex. 17F/2). Dr. Gutierrez Garza opined that total disability for any physical activity was suggested for the next twelve months (Ex. 17F/3). The undersigned gives little weight to the opinion of Dr. Gutierrez Garza because the longitudinal objective medical evidence does not support such a finding. *For example*, Dr. Gutierrez Garza examined claimant on January 8, 2013 indicating claimant's discomfort was well controlled and his stomach problems were under control. Dr. Gutierrez Garza noted claimant continued to have good control of his discomforts on February 6, 2013 and Dr. Gutierrez Garza recommended weight control and some exercise (Ex. 17F/6). Follow-up note dated April 19, 2013 revealed claimant with stable left knee discomfort and better mood. Dr. Gutierrez Garza recommended controlled exercise for muscle atrophy due to lack of use of the extremity (Ex. 21F/1). On May 18, 2013, claimant was stable with occasional discomfort above the knee and on the waist. Claimant reported that his paresthesia had diminished (Ex. 21F/2).
>
> On June 14, 2013, Dr. Gutierrez Garza advised claimant to perform *more exercise* to strengthen muscles and control his weight. As he increased his activities, his discomfort also grew. Dr. Gutierrez Garza prescribed an antidepressant (Ex. 17F/10). Important improvement of the calf muscle was noticed during a progress note dated July 20, 2013, but Dr. Gutierrez Garza noted the joint effusion on the right knee remained and increased in addition to edema. Dr. Gutierrez Garza initiated treatment to improve joint effusion (Ex. 22F/1). After 18 days of infiltration of the knee, the

> pain of the muscle tear disappeared, but there was still pain on the knee. Paresthesia was mostly controlled and MRI was ordered (Ex. 22F/2).
>
> Dr. Gutierrez Garza reviewed results from right knee MRI of claimant on September 26, 2013, which identified a fibrillation lesion on the anterior horn of the medial meniscus and a mild edema on the posterior horn, partial tear, and mild joint effusion (Ex. 20F/1). Dr. Gutierrez Garza explained the results to the claimant and indicated that these lesions do not explain such a persistent discomfort and physical therapy was considered (Ex. 18F/1). Follow-up note with Dr. Gutierrez Garza dated October 11, 2013 showed claimant with mild improvement regarding his discomfort and the joint effusion of the knee had diminished, but not disappeared. Treatment and physical therapy was advised. Medication for depression was maintained and controlled (Ex. 18F/1). On October 31, 2013, claimant presented with edema on both lower extremities and Dr. Gutierrez Garza prescribed a mild diuretic. There was improvement on his legs and minimal edema, generally controlled noted on November 29, 2013. Claimant continued to exercise and used elastic support for his legs (Ex. 18F/1).

(R. at 36 (emphasis added).)[6]

Thus, contrary to Plaintiff's argument, the ALJ did explain the basis for the ALJ's determination that Dr. Gutierrez's opinions were entitled to "little weight." (*See* R. at 36, 38.) The ALJ cited to several specific portions of the record to support his determination that Dr. Gutierrez's opinion was "not consistent with the longitudinal objective medical evidence of record." (R. at 38; *see also* R. at 36.) Additionally, the ALJ cited to the opinions of Dr. Rehman and Dr. Carrion, and gave those opinions "partial weight." (R. at 38; *see also* R. at 342-49, 359-60.) To the extent Plaintiff argues these two opinions cannot constitute substantial evidence to support the ALJ's decision, (*see* Dkt. No. 7 at 11-12 of 15), the undersigned disagrees. *See McAbee v. Colvin*, Civ. A. No. 6:13–2331–RMG, 2014 WL 7369510, at *12 (D.S.C. Dec. 29, 2014) ("[A]n ALJ may rely on a medical source opinion that did not have access to the entire medical record, so long as the ALJ considered the entire evidentiary record and substantial evidence supports the ALJ's decision."

---

[6]The undersigned notes that in his November 29, 2012 letter, Dr. Gutierrez stated, *inter alia*, "Total disability for **any physical activity** is suggested for the next twelve months, and periodic evaluation and control shall continue[.]" (R. at 389 (emphasis added).) However, as recognized by the ALJ, in his notes, Dr. Gutierrez encourages "more exercise." (*See* R. at 36; R. at 396.)

10

(citing *Thacker v. Astrue*, Civ. A. No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011), *adopted at* 2012 WL 380052 (W.D.N.C. Feb. 6, 2012))); *see also Dellinger v. Colvin*, Civ. A. No. 6:14-CV-1150-DCN, 2015 WL 5037942, at *6 (D.S.C. Aug. 26, 2015) (affirming the ALJ's decision to afford the opinions of the state agency consultants greater weight, noting that "[a]lthough there are admittedly some differences in the medical records and opinions that were not reviewed by the state agency consultants, these records and opinions are largely consistent with the records and opinions that the consultants were able to review").

Here, the ALJ thoroughly analyzed Dr. Gutierrez's opinions and explained his reasons for giving them "little weight." On this record, the undersigned recommends concluding the ALJ's evaluation of Dr. Gutierrez's opinions is supported by substantial evidence. *See Hunter*, 993 F.2d at 35 (noting that the treating physician rule "does not require that the [treating physician's opinions] be given controlling weight"); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." (internal quotation marks and citations omitted)).

### B.     **The ALJ's Credibility Analysis**

Plaintiff also contends the ALJ "failed to properly evaluate [his] credibility" where the ALJ found Plaintiff "not entirely credible prior to December 20, 2013," but "failed to provide a single reason for finding [Plaintiff's] testimony regarding his impairments not supported by the record other than making this conclusory finding." (Dkt. No. 7 at 13-14 of 15.)

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, the plaintiff must present "objective medical evidence showing the existence of a medical impairment(s) which results from the anatomical, physiological, or psychological abnormalities and which could reasonably be

expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks and citations omitted). The Fourth Circuit explained as follows:

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Craig*, 76 F.3d at 595; *see also* SSR 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").

In the case *sub judice*, the ALJ stated, *inter alia*,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to December 20, 2013, for the reasons explained in this decision.

(R. at 38.) If this statement was, in fact, the only portion of the decision analyzing Plaintiff's credibility, the undersigned would agree with Plaintiff that remand was proper. However, because the ALJ *did* explain his credibility analysis in another portion of the decision, and because the ALJ's decision is supported by substantial evidence, the undersigned recommends affirming the ALJ's decision. Earlier in his decision, the ALJ stated,

> At the hearing, claimant testified that he moved to California in June 2010. He currently lives in Mexico and has lived there since April 2012. He travels to Del Rio Texas once a week to check his mail. He is able to drive and he has a driver's license. He drives a car. He also reported herniated discs that cause pain to his back that radiated to his legs in 2008. Claimant testified that Dr. Hardy prescribed him a cane after left knee surgery; however the medical evidence does not support claimant's

> allegations of using a cane for ambulation. Claimant reported he was unable to lift more than five pounds which is also inconsistent with the objective medical evidence of record. In fact, the medical evidence shows claimant works out at the gym and report[ed] knee pain after performing leg presses (Ex. 2F/53). Claimant reported elevating his legs higher than his heart when swollen which is not supported in the objective medical evidence of record. Claimant reported his current medications stable his symptoms but he continues to experience problems with concentration due to pain.
>
> Claimant's activities of daily living are consistent with the residual functional capacity found herein. At the hearing, claimant reported he was able to cloth[e] himself and washes dishes. He walks as much as he can where he lives. He watches television and watches children. He washes his clothes and makes his bed. He reported performing light housework. He visited his friend in California in 2012.
>
> Upon application, [he] reported his ability to work was limited due to left knee vascular anatomy, eye problems, rheumatoid arthritis, and three herniated discs (Ex. 2E/2). However, the longitudinal objective medical evidence of record does not support claimant's allegations from May 1, 2009 through December 19, 2013. From May 1, 2009 through December 19, 2013, claimant's severe impairments caused some work related limitations but not to the extent as to preclude all work activity or limit him to less than a wide range of light work. The documentary evidence of record reveals x-ray of the lumbar spine dated August 6, 2009 revealed degenerative disc disease at L2-3 and L4-5 with mild to moderate spinal stenosis at L4-5 and mild degenerative disc disease at L5-L1 (Ex. 1F/4). Claimant presented at Inglewood Medical Center on June 10, 2011 for complaints of polyp and physical exam showed musculoskeletal with normal range of motion. Neurologically, he was alert and oriented to person, place, and time. He had normal motor skills, normal sensation, normal reflexes, and intact cranial nerves. He showed normal gait and Osbourne Blake, M.D. assessed claimant with polyp colon and optic neuritis (Ex. 2F/4). On November 4, 2011, follow-up exam revealed claimant as a 60-year-old male with seven-year history of recurrent anal fissure. Claimant reported complete resolution of anal pain and rectal bleeding (Ex. 2F/45).

(R. at 34.)

The undersigned finds no reversible error with respect to the ALJ's credibility analysis. Contrary to Plaintiff's arguments, the ALJ did specify reasons for his credibility determination. For example, the ALJ noted that while claimant reported that he was unable to lift more than five pounds, "the medical evidence shows claimant works out at the gym and report[ed] knee pain after performing leg presses." (R. at 34.) Certainly an ALJ may use inconsistencies such as these to assess a plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(4); *see also Bishop v. Comm'r*, 583 F. App'x

65, 68 (4th Cir. 2014) (finding "that the ALJ's determination that [the plaintiff's] subjective complaints were not credible was supported by substantial evidence" where, *inter alia*, "the ALJ cited specific contradictory testimony"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider," *inter alia*, "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid").

Additionally, the ALJ noted that the "longitudinal objective medical evidence of record" did not "support claimant's allegations from May 1, 2009 through December 19, 2013." (R. at 34.) Consideration of this medical evidence was proper. *See* SSR 96-7p, 1996 WL 374186, at *5 ("Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to . . . medical signs and laboratory findings. . . ."). In examining the medical evidence, the ALJ noted an August 2009 MRI that indicated "degenerative disc disease at L2-3 and L4-5 with mild to moderate spinal stenosis at L4-5 and mild degenerative disc disease at L5-L1." (R. at 34.) The ALJ further noted that Plaintiff's exam at Inglewood Medical Center in June of 2001 had numerous normal findings. (R. at 34.) Additionally, the ALJ used Plaintiff's activities of daily living in assessing Plaintiff's credibility. (*See* R. at 34.) Certainly daily activities are a relevant component of credibility analysis. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities including reading, cooking, attending church, cleaning house, doing laundry, and visiting were inconsistent with her complaints).

Thus, contrary to Plaintiff's argument, the ALJ did explain his credibility determination, and as indicated herein, the undersigned is of the opinion that credibility analysis is supported by

substantial evidence. The undersigned therefore recommends affirming the decision of the Commissioner.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

August 1, 2016
Charleston, South Carolina